IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL JEZIOR, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22 C 6907 |
| | ) | |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff, Michael Jezior, brings this suit against his employer, Defendant, the City of Chicago, claiming that the City discriminated against him and failed to reasonably accommodate his disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, *see* 42 U.S.C. § 12112, when it denied his promotion to Lieutenant. The case is before the Court on the City's motion for summary judgment under Federal Rule of Civil Procedure 56. For the following reasons, the motion is granted.

**Background**

The following facts come from the statements and responses the parties have submitted under Local Rule 56.1 and the supporting exhibits. They are undisputed or presented in the light most favorable to Plaintiff, the non-moving party, unless otherwise noted.

Plaintiff has been working for the Chicago Fire Department ("CFD") since 1997. He began as a paramedic and later trained to become a firefighter. He was promoted to the rank of "Fire Engineer/Paramedic" in 2011. (Pl.'s LR 56.1(b)(2) Resp. ¶ 42, ECF No. 115.) In 2009, Plaintiff applied to become a Lieutenant. Lieutenant applicants are ranked and placed on an eligibility list, and they are offered promotions as vacancies arise. Candidates who receive an offer can elect to

waive the promotion, if they would rather defer the opportunity until the next round of offers goes out.

In 2013, Plaintiff suffered a stroke, which left him unable to move his left hand, left arm and left leg. With rehabilitation, he regained some motion in his left arm and hand, but his mobility remains limited. He walks with a leg brace and uses a cane.

The job of a firefighter is physically demanding, and Plaintiff admits that, even after rehabilitation, he could not—and cannot, to this day—meet the job's physical requirements or perform the essential job functions of a firefighter without accommodation. On June 25, 2014, he submitted a request for a reasonable accommodation, and his supervisor recommended that he be assigned to a position at O'Hare airport, where he could work in a non-firefighting role performing procurement and logistics tasks. Plaintiff accepted this assignment, and he has worked at the airport ever since.

Plaintiff's predecessor in that position, Leslie Muse, held the rank of Lieutenant while working there. Muse did not suffer from any disability. According to Richard Ford, who served as Commissioner (*i.e.*, the head of CFD) between 2018 and mid-2021, and who happens to be Muse's brother, personnel from the City's budget department informed Muse's supervisor, Timothy Sampey, that "they would not finance her being the procurement officer in a position of lieutenant." (Ford Dep. Tr. at 15:14-21, ECF No. 107-7 at 162.) She was reassigned to an operational (*i.e.*, firefighting) position.

In 2016, the City's Office of the Inspector General ("OIG") released the results of an audit of CFD positions, which found that "35 uniformed members were assigned to positions whose duties did not require nor sufficiently benefit from the training and experience of firefighters or paramedics." (Pl.'s LR 56.1(b)(2) Resp. ¶ 54.) These positions could be "civilianized," which

would save the City some $1.2 million annually. Accordingly, the OIG recommended that CFD reassign uniformed firefighters holding these positions to operational positions. One of the positions that the OIG recommended civilianizing was the "Procurement and Inventory Support" position that Plaintiff held and still holds. This recommendation was never implemented. However, following the publication of the OIG audit, the City's Office of Budget Management ("OBM") removed a budget line for a Lieutenant position, identified by the OIG as "Procurement and Inventory Support," from the City's budget for O'Hare airport. The City replaced it with a civilian position for a "Stores Laborer," which paid an hourly rate of $43.73, less than Plaintiff makes as a uniformed Paramedic/Engineer.

In March 2021, Plaintiff learned that CFD had reached his number on the eligibility list, meaning he would have the opportunity to accept a promotion to the rank of Lieutenant. He hoped to accept the promotion while continuing to work in his procurement role at the airport, an arrangement that he believed some of his CFD superiors approved of.

Ford, however, did not approve of it. He told Brian Helmold, the Deputy Fire Commissioner of Administrative Services, that he intended to deny Plaintiff's promotion because Plaintiff could not meet the physical requirements of the job. Shortly afterward, on March 16, 2021, Plaintiff met with John Gies, the District Chief of Airport Operations; Michael Butkus, a union representative; and Helmold. Helmold informed Plaintiff that he could either (a) waive the promotion and continue to work at the airport, or (b) accept it, and the City would search for a position he could perform with his physical restrictions. Helmold did not identify any particular position Plaintiff might be offered, and Plaintiff worried that, if he was assigned a position that he turned out to be unable to perform, he could be forced into retirement. Helmold told plaintiff that, if he accepted the promotion, he might be placed in a non-firefighting position in the Fire

3

Protection Bureau ("FPB"), if one was available. The FPB inspects buildings to ensure compliance with the City's fire code.

Plaintiff and Butkus responded that Plaintiff could not accept a position at the FPB because he could not climb stairs. Ford and Helmold knew of CFD employees needing accommodations who had been assigned to the FPB, but Helmold did not know for certain that there was a job at the FPB that Plaintiff could perform at that time.

On March 26, 2021, Ford signed a "Title Change" form memorializing his decision not to approve changing Plaintiff's title to "Lieutenant/Paramedic," *i.e.*, refusing to permit him to change his rank and accept a promotion while staying in the same airport role. The "effective date" of the decision is listed as April 16, 2021. Ford explained that he had not received any accommodation paperwork or medical documentation dictating a different decision.

Sometime after his first meeting with Butkus and Plaintiff, Helmold became aware that someone in the FPB holding the rank of Lieutenant was retiring. Helmold did not know the precise physical requirements of the position. On March 31, 2021, Helmold sent an email to Butkus stating that Plaintiff could either waive the promotion and remain in his position at the airport, or he could "transfer to FPB at the rank of Lieutenant, provided he is medically cleared to perform the duties and responsibilities necessary for that position." (*Id.* ¶ 78.) He represented that it was "CFD's understanding that there [were] no other Lieutenant positions available that could possibly accommodate Jezior's physical restrictions" at that time. (*Id.*)

Butkus informed Plaintiff of the email and asked if he wanted to accept the position. Plaintiff declined, fearing to accept a position at the FPB that he might turn out to be physically unable to perform, which, he believed, might force him into an early retirement. He told Butkus that, if those were the options, he would prefer to stay at the airport.

4

On April 13, 2021, Helmold, Plaintiff, and Gies met again. Helmold told Plaintiff that he could accept the promotion to Lieutenant, which would require him to move to the FPB and be medically cleared to perform whatever duties he was assigned there, or he could waive the promotion and stay at the airport in his current assignment and rank. The City asserts that Plaintiff was also informed that he could request an accommodation from the City's Disability Office.

Plaintiff purports to deny, apparently, that he was informed of the Disability Office route at the April 13 meeting (*id.* ¶ 81), but he admits that he did speak with the City's Disability Officer, Kathryn Perry Hopkins, a couple of days later. Plaintiff explained that he wanted to stay at the airport because he knew his physical restrictions would not prevent him from performing his job duties there, and he was particularly worried about being unable to navigate stairs. Perry Hopkins told Plaintiff that she could see what she could do to find him an assignment at a facility with an elevator, but she could not make any promises, and she understood that there was a deadline for his decision the following day. Plaintiff told her that, rather than filing formal accommodation paperwork, he would rather stay at the airport and wait until a new CFD commissioner took the job in a few months, after Commissioner Ford had aged out, when Plaintiff would "take his chances" again. (*Id.* ¶ 88.) He has not been offered another promotion to Lieutenant.

## Analysis

The ADA provides, as a "[g]eneral rule," that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. A "qualified individual" is an individual who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8). "To make out a claim under the ADA, an individual must

5

show: 1) that she is disabled; 2) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against her because of her disability or failed to make a reasonable accommodation." *Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 736 (7th Cir. 2000). Plaintiff asserts two claims arising under the ADA, both stemming from Defendant's unwillingness to promote Plaintiff to Lieutenant while he maintained his position at the airport. First, he claims that the City's refusal to promote him "in place" (*i.e.*, without changing job duties) was a failure to make a reasonable accommodation. Second, he claims that the City discriminated against him on the basis of disability. Plaintiff's complaint also asserts a retaliation claim, but Plaintiff states in his response brief that he is abandoning that claim. Defendant argues that it is entitled to summary judgment because Plaintiff has not come forward with evidence that would permit a reasonable jury to find in his favor on either of these claims.

## I. Legal Standard

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam*, 642 F.3d 578, 581 (7th Cir. 2011). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016). In answering that question, the court must consider the facts in the light most favorable to the non-moving party, giving that party "the benefit of all conflicts in the evidence and reasonable inferences that may be drawn from the evidence,"

regardless of whether it can "vouch for the objective accuracy of all" the evidence the non-moving party puts forward. *Fish v. GreatBanc Tr. Co.*, 749 F.3d 671, 674 (7th Cir. 2014).

Even though district courts must view the non-moving party's evidence in a generous light, it does not follow that they are "required to draw every requested inference; they must only draw reasonable ones that are supported by the record." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). "Inferences supported only by speculation or conjecture will not suffice." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893-94 (7th Cir. 2018). Genuine issues of material fact are not demonstrated by the "mere existence of some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013).

**II.   Reasonable Accommodation**

Plaintiff does not dispute that he could not perform the essential functions of his job; due to the lasting effects of his stroke, he was not physically capable of performing firefighting duties. Therefore, he required a "reasonable accommodation" to continue working for CFD. A "reasonable accommodation" may include such measures as "job restructuring, . . . reassignment to a vacant position, . . . appropriate adjustment or modification of . . . policies, . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9).

When an employer learns that one of its employees is unable to perform essential functions of her job but wishes to remain employed, "the employer must engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances."

7

*Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996) (quoting *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)); *see also Miller v. Illinois Dep't of Corr.*, 107 F.3d 483, 487 (7th Cir. 1997) ("Even if an employee who . . . becomes disabled while employed just says to the employer, 'I want to keep working for you-do you have any suggestions?' the employer has a duty under the [ADA] to ascertain whether he has some job that the employee might be able to fill."). There is no "hard and fast rule" defining the employer's responsibilities vis-à-vis the employee in this flexible, "interactive process" because:

> neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.

*Beck*, 75 F.3d at 1135. Thus, employers must make a good-faith effort toward reasonable accommodation. *See Haschmann v. Time Warner Entm't Co.*, 151 F.3d 591, 602 (7th Cir. 1998); *see also id.* at 601 n.12 (holding that district court properly instructed jury that defendant must prevail if evidence showed that defendant made a "good faith effort and consulted with the plaintiff to identify and make a reasonable accommodation" that would not cause an undue hardship).

Plaintiff responds that there is evidence that the City frequently borrowed from other budget lines to fund promotions of firefighters to roles that it had not specifically budgeted for, and it could have done that for Plaintiff to allow him to work at the airport in procurement as a Lieutenant. Additionally, Plaintiff argues that Ford and Helmold were required to do more to find a way to accommodate him at the Lieutenant level; Ford took no action at all, claiming that he was waiting for accommodation paperwork that never arrived, and Helmold never presented Plaintiff

8

with a position at the FPB that Plaintiff was confident would not be beyond his physical capacity to perform.

Based on the undisputed facts, a reasonable juror could not conclude that the ADA required the City to do these things under the circumstances. "An employer is not obligated to provide an employee the accommodation he requests or prefers[;] the employer need only provide some reasonable accommodation." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996); *see Gratzl v. Off. of Chief Judges of 12th, 18th, 19th, & 22nd Jud. Cirs.*, 601 F.3d 674, 680, 680 n. 4 (7th Cir. 2010). "[A]n employer is not obligated to accommodate a disabled employee by promoting him or her to a higher level position." *Malabarba v. Chicago Trib. Co.*, 149 F.3d 690, 700 (7th Cir. 1998). "Nor is an employer obligated to create a 'new' position for the disabled employee," *Gile*, 95 F.3d at 499, or "to reassign an employee to a permanent light duty position," *Gratzl*, 601 F.3d at 680; *see also Dalton v. Subaru-Isuzu Auto., Inc.*, 141 F.3d 667, 678 (7th Cir. 1998) ("Nothing in the ADA requires an employer to abandon its legitimate, nondiscriminatory company policies defining job qualifications, prerequisites, and entitlements to intra-company transfers.")

Here, Plaintiff had been working with an accommodation for years, and when his number came up on the promotion eligibility list, Defendant told him that he could keep his current accommodation at his current rank. If he wanted to accept the promotion to Lieutenant, he would have to find a position he would be medically cleared to perform. The parties discussed the possibility of such a job in the FPB, where there were non-operational Lieutenant positions, one of which became available during the parties' negotiations. In his response brief, Plaintiff faults Defendant and Helmold for not knowing, at the time of the discussions between the parties, of a position in the FPB that Plaintiff could definitely handle, even with his physical limitations. This

9

is puzzling because Plaintiff admits that he was uninterested in learning about positions in the FPB. (Pl.'s LR 56.1(b)(2) Resp. ¶ 79.) Plaintiff spoke with Perry Hopkins about potential accommodations, but he decided not to proceed with accommodation paperwork because he had already been told that CFD would not allow him to be promoted in place at the airport, so he would instead "take his chances" with the next CFD commissioner when the next promotion eligibility list came out. (*Id.* ¶¶ 87-88.) Therefore, it is clear from the undisputed facts that Plaintiff wanted to be promoted in place, *i.e.*, he wanted to remain in his current position at the airport and be promoted to Lieutenant, without any change in job duties, and he was not interested in exploring other options. With regard to any of these other options, there is no genuine factual dispute that it was Plaintiff, not Defendant, who broke off the interactive process.

As for promotion in place, the Court fails to see why the law required it under the circumstances of this case. The City's budget office had requested Commissioner Ford's own sister be removed from a non-operational Lieutenant position at the airport, and later, in the OIG report, the City formally expressed a preference for using civilian personnel, rather than higher-paid uniformed personnel, to perform procurement functions at the airport. It is undisputed that this recommendation was never formally implemented, but nevertheless, the Court fails to see why Commissioner Ford was required to turn a blind eye to it and knowingly exacerbate the problem the OIG had identified by placing another uniformed Lieutenant at the airport. CFD was entitled to insist instead that, if Plaintiff wanted a promotion, it had to be elsewhere. Any other ruling would entitle plaintiff to the accommodation of his preference, which is more than the ADA requires. *See Malabarba*, 149 F.3d at 699; *Gratzl*, 601 F.3d at 681 ("[E]ven if [the plaintiff] was a qualified individual with a disability . . . it was still up to the [employer]—not [the plaintiff]—to

10

construct the accommodation."). Defendant's motion for summary judgment is granted as to the reasonable accommodation claim.

## III. Discrimination

To prove a claim of disability discrimination, "a plaintiff must show that: (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability." *McCann v. Badger Mining Corp.*, 965 F.3d 578, 588 (7th Cir. 2020). If the opposing party moves for summary judgment, then "the ultimate question is whether a reasonable juror could conclude" that the adverse job action at issue would not have occurred "if [the plaintiff] was not disabled, and everything else had remained the same." *Id.* at 589 (cleaned up) (citing *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 764 (7th Cir. 2016)). In other words, Plaintiff must come forward with evidence that would permit a reasonable juror to conclude that he would have been promoted in place if he were not disabled, and everything else was the same.

Plaintiff argues that he has met this burden by coming forward with evidence of pretext, suspicious timing, and that similarly situated CFD employees were treated differently. *See Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 507 (7th Cir. 2017) (citing "suspicious timing," "evidence . . . that similarly situated employees outside the protected group . . . receive better treatment" and "evidence that the employer offered a pretextual reason for an adverse employment action" as types of "circumstantial evidence" that may be used to prove disability discrimination) (internal quotation marks omitted). First, Plaintiff argues, a jury could conclude that CFD offered a pretextual reason for refusing to promote him in place, to the extent that Ford and Helmold's accounts conflicted. Ford cited Plaintiff's inability to meet the physical requirements of the job and the absence of any proper accommodation paperwork. Helmold, however, told Plaintiff that

11

he could not be promoted in place for budgetary reasons—which is specious, in any case, according to Plaintiff, because it was common to fill a budgetary hole by borrowing from other positions or other budget lines. Second, and relatedly, Plaintiff argues there is suspicious timing in the fact that Ford signed the "Title Change" form on March 26, 2021, before Plaintiff had made a final decision about his preference, and while Plaintiff, Helmold, and Butkus were still discussing possibilities for promoting him. Third, Plaintiff argues that Helmold, Sampey, and another CFD Lieutenant, John McGill, all received promotions while staying in the same position they already occupied, even if it was necessary to borrow funds from another budget line to fund their promotions.

First, while "[s]hifting and inconsistent explanations can provide a basis for a finding of pretext[,] . . . the explanations must actually be shifting and inconsistent to permit an inference of mendacity." *McCann*, 965 F.3d at 589-90. The Court agrees with Defendant that the explanations here are not truly shifting; "instead[,] they build on one another," and when the evidence is taken as a whole, "[t]he City's reasons are not internally inconsistent[,] nor was there a wholesale change . . . as would evidence discrimination." *Shalabi v. City of Chicago*, No. 21 CV 5623, 2024 WL 1328791, at *9 (N.D. Ill. Mar. 28, 2024); *see Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 577 (7th Cir. 2015); *cf. Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 738 (7th Cir. 2013). The evidence tells a consistent story: CFD was under budgetary pressure to avoid staffing non-operational positions at the airport with uniformed personnel, so it decided not to exacerbate the budgetary problem by promoting Plaintiff to the rank of Lieutenant while he remained in a non-operational position at the airport (although it offered him the opportunity to pursue a promotion at the FPB). Ford and Helmold's explanations are, therefore, two sides of the same coin, to the extent that they

addressed both Plaintiff's physical limitations and the budget, respectively, which were different aspects of the same problem.

As for Ford signing the "Title Change" form on March 26, 2021, while Helmold was still in the midst of discussions about the possibility of promotion with Plaintiff, the Court fails to see anything particularly suspicious about it, given that Ford's actions are consistent with his stated reasoning. Ford stated that he denied Plaintiff's promotion in place because he believed that Plaintiff was not physically qualified to be a Lieutenant, and he had received no accommodation paperwork. The integrity of this reasoning does not depend on the timing of the decision; it would have been the same at any point during the relevant time period. While there may seem to be an inconsistency between Ford's signing the form on March 26, 2021, and Helmold's continued discussions with Plaintiff beyond that date, the details do not bear out the theory that there is reason for suspicion that either Ford or Helmold were acting dishonestly or in bad faith. Ford himself suggested that, if there were any possibility of a promotion, Helmold could bring it to Ford's attention (Ford Dep. at 29:7-19, ECF No. 107-7 at 165), and Helmold was still telling Plaintiff that he could pursue a Lieutenant position in the FPB as of March 31, 2021, when he sent Plaintiff an email to that effect. The "Title Change" document signed by Ford explicitly stated that the decision did not go into effect until April 16, 2021, which was only after Plaintiff decided not to pursue the promotion opportunity and instead "take his chances" with the next commissioner. If there is anything suspicious in these circumstances, it does not support the theory that the refusal to promote plaintiff to Lieutenant while he remained at the airport was discriminatory. And neither pretext nor suspicious timing alone typically suffices to overcome summary judgment. *See McGreal v. Vill. of Orland Park*, 850 F.3d 308, 314 (7th Cir. 2017); *Lane v. Riverview Hosp.*, 835 F.3d 691, 697 (7th Cir. 2016); *Coggin v. Medline Indus., Inc.*, No. 22 C 6775, 2024 WL 4252777,

at *5 (N.D. Ill. Sept. 20, 2024) (citing *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 898 (7th Cir. 2015)).[1]

Finally, Plaintiff claims that there were similarly situated firefighters who were treated differently when CFD promoted them by borrowing funds from other budget lines. However, none of the alleged comparators whom he mentions in his response brief—McGill, Helmold, and Sampey—appear to have been meaningfully comparable. "The similarly situated inquiry is a flexible, common-sense one that asks, at bottom, whether there are enough common factors to allow for a meaningful comparison in order to divine whether intentional discrimination was at play." *Monroe*, 871 F.3d at 507 (internal quotation marks omitted). Such common factors include whether the alleged comparators "dealt with the same supervisor, were subject to the same standards and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* (internal quotation marks omitted). "Put a different way, the purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable"—here, whether the employee suffered from a disability. *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), *aff'd,* 553 U.S. 442 (2008). "[T]he degree of similarity necessary may vary" from case to case, "but the fundamental issue remains whether . . . distinctions [between comparators and the plaintiff] are so significant that they render the comparison effectively useless." *Id.*

---

[1] The Court notes that evidence of pretext and suspicious timing, together, *can* overcome summary judgment. *See, e.g.*, *Coleman v. Donahoe*, 667 F.3d 835, 862 (7th Cir. 2012). But here, there is neither.

Helmold and McGill held "exempt-rank" positions. These are top management positions such as Deputy District Chief and Assistant Deputy Fire Commissioner, the positions McGill and Helmold, respectively, were promoted to by borrowing from other budget lines. (Def.'s LR 56.1(c)(2) Resp. ¶¶ 19-20, ECF No. 128.) These situations are too dissimilar from Plaintiff's to support any meaningful comparison. Plaintiff cites no evidence of Sampey's promotion history at all in his response brief, Local Rule 56.1(b)(3) statement, or Local Rule 56.1(b)(2) response.

"Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) (internal quotation marks omitted). For the foregoing reasons, Plaintiff has not come forward with evidence sufficient to survive Defendant's motion for summary judgment, which is therefore granted.

That leaves one final matter: Defendant has filed a motion to seal certain personnel records containing confidential information of third parties. There is good cause to seal this sensitive personal information, which the Court has not relied on in this decision, in any case. The motion to seal is therefore granted.

## CONCLUSION

Defendant's motion for summary judgment [105] is granted. Defendant's motion to seal [103] is granted. Civil case terminated.

**SO ORDERED.**                                                          **ENTERED:  March 7, 2025**

_____
**JORGE L. ALONSO**
**United States District Judge**